**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALFRED O'MEARA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SHIFT4 PAYMENTS, INC., JARED ISAACMAN, NANCY DISMAN, and BRADLEY HERRING, <br><br> Defendants. | Case No.  5:23-cv-03206-JFL |
| ROBERT BAER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SHIFT4 PAYMENTS, INC., JARED ISAACMAN, NANCY DISMAN, and BRADLEY HERRING, <br><br> Defendants. | Case No.  5:23-cv-03969-JFL |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ROBERT BAER FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL**

**TABLE OF CONTENTS**

STATEMENT OF FACTS ....................................................................................................1

STATEMENT OF THE QUESTIONS INVOLVED ...................................................................5

SUMMARY OF ARGUMENT ..............................................................................................5

ARGUMENT.....................................................................................................................6

      A.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED .............................6

      B.     BAER SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE
            CLASS ...................................................................................................8

            1.     Baer Is Willing to Serve as Class Representative ........................................9

            2.     Baer Has the "Largest Financial Interest" ...................................................9

            3.     Baer Otherwise Satisfies the Requirements of Rule 23 ..............................10

            4.     Baer Will Fairly and Adequately Represent the Interests of the
                 Class and Is Not Subject to Unique Defenses.............................................13

      C.     LEAD PLAINTIFF'S SELECTION OF CO-LEAD COUNSEL SHOULD
            BE APPROVED ...................................................................................13

CONCLUSION.................................................................................................................15

CERTIFICATE OF SERVICE ............................................................................................17

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.F.I.K. Holding SPRL v. Fass*,
  216 F.R.D. 567 (D.N.J. 2003) ............................................................................................ 10

*Allegheny Cty. Emples. Ret. Sys. v. Energy Transfer LP*, No. 20-200,
  2020 U.S. Dist. LEXIS 27788 (E.D. Pa. Feb. 18, 2020) .................................... 11, 12, 13, 14

*Bassin v. Decode Genetics, Inc.*,
  230 F.R.D. 313 (S.D.N.Y. 2005) ........................................................................................... 7

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006) ........................................................................................... 11, 12

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
  252 F.R.D. 188 (S.D.N.Y. 2008) ....................................................................................... 7, 8

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, No. 04-0265,
  2004 U.S. Dist. LEXIS 10200 (E.D. Pa. June 3, 2004) ..................................................... 10

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ............................................................................................... 10

*In re Comverse Tech., Inc., Sec. Litig.*, No. 06-CV-1825 (NGG)(RER),
  2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ................................................... 10

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
  2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ...................................................... 7

*In re Lucent Techs. Sec. Litig.*,
  194 F.R.D. 137 (D.N.J. 2000) ............................................................................................. 11

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) .................................................................................... 10

*In re Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009) ....................................................................................... 7, 8

*In re Vicuron Pharms., Inc. Sec. Litig.*,
  225 F.R.D. 508 (E.D. Pa. 2004) .......................................................................................... 10

*In re Vonage Initial Pub. Offering Sec. Litig.*, No. 07-177 (FLW),
  2007 U.S. Dist. LEXIS 66258 (D.N.J. Sep. 6, 2007) .......................................................... 12

ii

*Janovici v. DVI, Inc.*, Nos. 2:03-CV-04795-LDD *et al.*,
2003 U.S. Dist. LEXIS 22315 (E.D. Pa. Nov. 25, 2003)..........................................................10

*Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715 *et al.*,
1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ..........................................................10

*Malcolm v. Nat'l Gypsum Co.*,
995 F.2d 346 (2d Cir. 1993)..........................................................................................................7

*Tomaszewski v. Trevena, Inc.*,
383 F. Supp. 3d 409 (E.D. Pa. 2019) .......................................................................................14

## Statutes

15 U.S.C. § 78u-4 ...................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 .................................................... *passim*

## Rules

Fed. R. Civ. P. 23.......................................................................................................... *passim*

Fed. R. Civ. P. 42...................................................................................................1, 5, 6, 7

Movant Robert Baer ("Baer") respectfully submits this Memorandum of Law in support of his motion pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Baer as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired Shift4 Payments, Inc. ("Shift4" or the "Company") securities between June 5, 2020 and April 18, 2023, both dates inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") and The Schall Law Firm ("Schall") as Co-Lead Counsel for the Class.[1]

## STATEMENT OF FACTS

Shift4 provides software and payment processing solutions in the United States. O'Meara Complaint at 2, ¶ 2; Baer Complaint at 2, ¶ 2. Shift4 provides, among other products and services, integrated and mobile point-of-sale ("POS") solutions. O'Meara Complaint at 2, ¶ 2; Baer Complaint at 2, ¶ 2. Shift4 conducted its initial public offering and began operating as a publicly traded company on or about June 5, 2020. Baer Complaint at 2, ¶ 2.

---

[1] On August 18, 2023, the first-filed of the Related Actions was filed in this Court, styled *O'Meara v. Shift4 Payments, Inc. et al.*, No. 5:23-cv-03206 (E.D. Pa.) ("O'Meara Action"), alleging a class period including all those that purchased or otherwise acquired Shift4 securities between November 10, 2021 and April 18, 2023, both dates inclusive. *See* Dkt. No. 1 ("O'Meara Complaint") at 1-2, ¶ 1. On October 13, 2023, a second action alleging substantially the same wrongdoing as the O'Meara Action against the same Defendants was filed in this Court, styled *Baer v. Shift4 Payments, Inc. et al.*, No. 5:23-cv-03969 (E.D. Pa.) ("Baer Action"), alleging a larger class period including all those that purchased or otherwise acquired Shift4 securities between June 5, 2020 and April 18, 2023, both dates inclusive. *See* Baer Action, Dkt. No. 1 ("Baer Complaint") at 1-2, ¶ 1. Therefore, to avoid excluding any potential class members, this motion has adopted the larger class period alleged in the Baer Action.

In Shift4's third quarter of 2022, the Company completed its so-called "mass strategic buyout program" as part of a purported strategic initiative to insource its sales distribution network.  O'Meara Complaint at 2, ¶ 3; Baer Complaint at 2, ¶ 3.

According to Shift4, because the Company is not a "member bank" as defined in certain payment network rules, the Company is not eligible for primary membership in certain payment networks and is therefore unable to directly access them.  O'Meara Complaint at 2, ¶ 4; Baer Complaint at 2, ¶ 4.  Accordingly, Shift4's payment networks require the Company to be sponsored by a member bank as a service provider, which the Company has accomplished through a sponsorship agreement with its sponsor bank.  O'Meara Complaint at 2, ¶ 4; Baer Complaint at 2, ¶ 4.  To cover overdraft obligations at the sponsor bank, prior to December 2022, Shift4 had funds deposited in a sponsor bank merchant settlement account to facilitate gross card transaction deposits for those customers the Company bills on a monthly, as opposed to a daily, basis.  O'Meara Complaint at 2, ¶ 4; Baer Complaint at 2, ¶ 4.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  O'Meara Complaint at 2, ¶ 5; Baer Complaint at 2, ¶ 5.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Shift4 had inadequate disclosure controls and procedures and internal control over financial reporting; (ii) as a result, Shift4 failed to properly account for customer acquisition costs, thereby artificially inflating its net cash provided by operating activities; (iii) accordingly, Shift4 would likely be forced to restate one or more of its previously issued financial statements; (iv) Shift4 employed accounting maneuvers in connection with, among other things, its mass strategic buyout program and sponsor bank merchant settlement account, that were designed to present an inaccurate picture of, *inter alia*,

the Company's performance, its underlying business quality, and its earnings power; (v) all the foregoing, once revealed, was likely to negatively impact Shift4's reputation and business; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.  O'Meara Complaint at 2-3, ¶ 5; Baer Complaint at 2-3, ¶ 5.

On October 21, 2022, Shift4 disclosed in a filing with the U.S. Securities and Exchange Commission ("SEC") that the Company's third quarter 2021, full year 2021, first quarter 2022, and second quarter 2022 financial statements should no longer be relied upon and would need to be restated because of a material weakness in the Company's financial controls, which had caused it to incorrectly treat "customer acquisition costs" as cash used in investing activities rather than cash used in operating activities in its Consolidated Statements of Cash Flows. O'Meara Complaint at 3, ¶ 6; Baer Complaint at 3, ¶ 6.

On this news, Shift4's stock price fell $1.21 per share, or 2.67%, to close at $44.16 per share on October 24, 2022.  O'Meara Complaint at 3, ¶ 7; Baer Complaint at 3, ¶ 7.

On November 8, 2022, Shift4 filed restated financial statements with the SEC to properly account for its historical customer acquisition costs.  Baer Complaint at 3, ¶ 8.  As a result of the restatements, Shift4 negatively revised its net cash provided by operating activities to $8 million (down from its originally reported $26.7 million), $4 million (down from its originally reported $23.4 million), and $3 million (down from its originally reported $29.2 million) for the years ended December 31, 2019, 2020, and 2021, respectively; negatively revised its net cash used in operating activities to $7.1 million (up from its originally reported $1.7 million) and net cash provided by operating activities to $30.8 million (down from its originally reported $37.1 million) for the three months ended March 31, 2021 and 2022, respectively; negatively revised its originally reported $5 million of net cash *provided by* operating activities to $7.7 million of

3

net cash *used in* operating activities for the six months ended June 30, 2021, as well as negatively revised net cash provided by operating activities to $70.8 million (down from its originally reported $85 million) for the six months ended June 30, 2022; and negatively revised its net cash provided by operating activities to $6.3 million (down from its originally reported $25.6 million) for the nine months ended September 30, 2021.  *Id.* at 3-4, ¶ 8; *see also* O'Meara Complaint at 3, ¶ 6.

On April 19, 2023, Blue Orca Capital published a report addressing Shift4 (the "Blue Orca Report").  O'Meara Complaint at 3, ¶ 8; Baer Complaint at 4, ¶ 9.  The Blue Orca Report alleged, among other things, that "Shift4 [is], in reality, a roll-up of low-tech POS systems and payment processors which is substantially less profitable, generates far less cash, and is materially more levered than investors are led to believe."  O'Meara Complaint at 3-4, ¶ 8; Baer Complaint at 4, ¶ 9.  The Blue Orca Report further alleged that in 2022, "Shift4 engaged in a string of highly questionable and hyper-aggressive accounting maneuvers seemingly designed to keep the stock afloat, from cash flow manipulation to inexplicable distributor acquisitions that enabled it to capitalize a major component of COGS [cost of goods sold]."  O'Meara Complaint at 4, ¶ 8; Baer Complaint at 4, ¶ 9.  For example, the Blue Orca Report alleged, *inter alia*, that Shift4's "buyout of 50% of its independent distributors"—*i.e.*, in connection with its mass strategic buyout program—"and Q4 2022 cash account withdrawal" from its sponsor bank merchant settlement account "together inflated operating cash flow by 61%."  O'Meara Complaint at 4, ¶ 8; Baer Complaint at 4, ¶ 9.

On this news, Shift4's stock price fell $5.95 per share, or 8.68%, to close at $62.59 per share on April 19, 2023.  O'Meara Complaint at 4, ¶ 9; Baer Complaint at 4, ¶ 10.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the plaintiffs in the Related Actions and other Class members have suffered significant losses and damages.  O'Meara Complaint at 4, ¶ 10; Baer Complaint at 5, ¶ 11.

## STATEMENT OF THE QUESTIONS INVOLVED

1.      Whether the Related Actions should be consolidated pursuant to Rule 42.

2.      Whether Baer is the "most adequate plaintiff" pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(i).

3.      Whether to approve Baer's selection of Co-Lead Counsel, Pomerantz and Schall, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

## SUMMARY OF ARGUMENT

The Complaints in the Related Actions allege that Defendants defrauded investors in violation of the Exchange Act.  Shift4 investors, including Baer, incurred significant losses following the disclosures of the alleged fraud, which caused the prices of Shift4 securities to fall sharply, damaging Baer and other Shift4 investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact.  Here, the Related Actions are both putative class actions alleging violations of the Exchange Act by the same Defendants arising from substantially the same alleged fraud.  As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as lead plaintiff the movant that possesses the largest financial interest in the outcome of the Related Actions and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  15 U.S.C. § 78u-

5

4(a)(3)(B)(iii)(I).    During the Class Period, Baer purchased 160 Shift4 shares, expended $13,039 on these purchases, retained all of his Shift4 shares, and, as a result of the disclosures of the fraud, incurred losses of approximately $2,677.  *See* Declaration of Emily C. Finestone in Support of Motion ("Finestone Decl."), Exhibit ("Ex.") A at *2.  Beyond his significant financial interest, Baer also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the Class's interests.

To fulfill his responsibilities as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Baer has selected Pomerantz and Schall as Co-Lead Counsel for the Class.  Pomerantz and Schall are highly experienced in the area of securities litigation and class actions and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes.

Accordingly, Baer respectfully requests that the Court enter an Order consolidating the Related Actions, appointing Baer as Lead Plaintiff for the Class, and approving his selection of Pomerantz and Schall as Co-Lead Counsel for the Class.

## ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.  *See* Fed. R. Civ. P. 42(a); Manual for Complex Litigation

6

(Third), § 20.123 (1995).  Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008).  Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005); *In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *5 (S.D.N.Y. July 29, 2009).

The Related Actions at issue here clearly involve common questions of law ***and*** fact. Each action was brought against the same Defendants in connection with violations of Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder, arising from substantially the same alleged fraudulent misconduct.  Accordingly, the Related Actions allege substantially the same wrongdoing—namely that Defendants issued materially false and misleading statements and omissions during the Class Period, which artificially inflated the price of Shift4 securities and subsequently damaged the putative Class members when the price of Shift4 securities plummeted as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Bassin*, 230 F.R.D. at 315 (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *GE*, 2009 U.S. Dist. LEXIS 69133, at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the

parties."); *Tronox*, 262 F.R.D. at 344 (consolidating securities class actions); *Blackmoss*, 252 F.R.D. at 190 (same).

### B.    BAER SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

Baer should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in the Related Actions to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

8

As set forth below, Baer satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.    Baer Is Willing to Serve as Class Representative

On August 20, 2023, counsel for plaintiff in the first-filed of the Related Actions caused the statutorily required Notice of that action to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against Shift4 and other defendants, and which advised investors in Shift4 securities that they had until October 19, 2023—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Finestone Decl., Ex. B at *2.

Baer has filed the instant motion pursuant to the Notice and has submitted a sworn Certification executed by him attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C at *2 ¶ 4.[2] Accordingly, Baer satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.    Baer Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

To the best of his knowledge, Baer has the largest financial interest of any putative Class member seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated

---

[2] Due to a scrivener's error, the schedule of transactions appended to Baer's initial Certification (Baer Action, Dkt. Nos. 1-1, 1-2) was inaccurate. *See id.*, Dkt. No. 1-2 at *1. Submitted with the instant motion as Ex. C to the Finestone Decl. is an amended Certification, signed by Baer, setting forth a corrected schedule of his transactions. *See* Finestone Decl., Ex. C at *3.

9

in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.[3]  Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at *17-18 (N.D. Ill. Aug. 6, 1997).  Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA.  *See, e.g.*, *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, No. 04-0265, 2004 U.S. Dist. LEXIS 10200, at *2-4 (E.D. Pa. June 3, 2004); *Janovici v. DVI, Inc.*, Nos. 2:03-CV-04795-LDD *et al.*, 2003 U.S. Dist. LEXIS 22315, at *32-36 (E.D. Pa. Nov. 25, 2003); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 572 (D.N.J. 2003).

During the Class Period, Baer: (1) purchased 160 shares of Shift4 securities; (2) expended $13,039 on his purchases of Shift4 securities; (3) retained all of his shares of Shift4 securities; and (4) as a result of the disclosures of the fraud, suffered losses of approximately $2,677 in connection with his Class Period transactions in Shift4 securities.  *See* Finestone Decl., Ex. A at *2.  To the extent that Baer possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.   Baer Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule

---

[3] *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc., Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at *22-25 (E.D.N.Y. Mar. 2, 2007).

23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"For the purposes of examining a motion for the appointment of lead plaintiff, the Rule 23 analysis 'should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy.' Indeed, 'the statutory structure and the legislative history suggest that the court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements need not be extensive.'" *Allegheny Cty. Emples. Ret. Sys. v. Energy Transfer LP*, No. 20-200, 2020 U.S. Dist. LEXIS 27788, at *17 (E.D. Pa. Feb. 18, 2020) (internal citation omitted) (quoting *Cendant*, 264 F.3d at 263-64); *see also In re Lucent Techs. Sec. Litig.*, 194 F.R.D. 137, 149 (D.N.J. 2000).

The typicality requirement of Rule 23(a)(3) is satisfied where "the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory")).

Baer's claims are typical of those of the Class. Baer alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Shift4, or omitted to state

11

material facts necessary to make the statements they did make not misleading.  Baer, like other Class members, purchased Shift4 securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Shift4's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that representative parties "will fairly and adequately protect the interests of the class."  Further, "[w]hen assessing a movant's adequacy to be lead plaintiff, 'courts should consider whether [the movant] has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class.'"  *Allegheny*, 2020 U.S. Dist. LEXIS 27788, at *18-19 (quoting *Cendant*, 264 F.3d at 265); *see also Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent'" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997))); *In re Vonage Initial Pub. Offering Sec. Litig.*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *19 (D.N.J. Sep. 6, 2007) (citing *Cendant*, 264 F.3d at 265).

Baer is an adequate representative for the Class.  Here, Baer has submitted a signed Certification declaring his commitment to protect the interests of the Class.  *See* Finestone Decl., Ex. C at *2 ¶ 4.  There is no evidence of antagonism or conflict between Baer's interests and those of the Class, and Baer's significant losses demonstrate that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.  Moreover, Baer has retained counsel

12

highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits his choice of Pomerantz and Schall to the Court for approval as Co-Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

Further demonstrating his adequacy, Baer has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See* Finestone Decl., Ex. D at 1-4, ¶¶ 1-7, 9-11.

### 4. Baer Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Baer as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Baer's ability and desire to fairly and adequately represent the Class has been discussed above. Baer is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class. Accordingly, Baer should be appointed Lead Plaintiff for the Class.

### C.    LEAD PLAINTIFF'S SELECTION OF CO-LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See id.* § 78u-4(a)(3)(B)(v); *Allegheny*, 2020 U.S. Dist. LEXIS

27788, at \*23-24; *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 417 (E.D. Pa. 2019). The Court should interfere with the Lead Plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *Allegheny*, 2020 U.S. Dist. LEXIS 27788, at \*23-24; *Tomaszewski*, 383 F. Supp. 3d at 417.

Here, Baer has selected Pomerantz and Schall as Co-Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Finestone Decl., Ex. E at 1-11. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, U.K., and Tel Aviv, Israel. *See id.* at 1. For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* at 1-2. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* at 1-8. More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.* at 2-3.

Schall likewise possesses a high degree of skill and professionalism, and has a history of successfully litigating complex matters, including several securities class actions throughout the United States. *See id.*, Ex. F at \*3-6. Indeed, while serving as co-counsel, Schall played an

14

integral role in *Erickson, et al. v. Snap, Inc., et al.*, No. 17-cv-03679 (C.D. Cal.), securing the second largest securities class action settlement recovery in the United States in 2021. *See id.* at *3-4.

As a result of their extensive experience in litigation involving issues similar to those raised in the instant Related Actions, Baer's counsel, Pomerantz and Schall, have the skill, knowledge, expertise, and experience that will enable them to prosecute these Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving Baer's selection of Pomerantz and Schall as Co-Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Baer respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Baer as Lead Plaintiff for the Class; and (3) approving Baer's selection of Pomerantz and Schall as Co-Lead Counsel for the Class.

Dated:   October 19, 2023                    Respectfully submitted,

**POMERANTZ LLP**

*s/ Emily C. Finestone*
Emily C. Finestone (SBN 323709)
Jeremy A. Lieberman (admitted *pro hac vice*)
J. Alexander Hood II  (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
efinestone@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice* application forthcoming)
Angus Ni (*pro hac vice* application forthcoming)
2049 Century Park East, Suite 2460

15

Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com
angus@afnlegal.com

*Counsel for Robert Baer and Proposed Co-Lead
Counsel for the Class*

Case 5:23-cv-03206-JFL   Document 14-1   Filed 10/19/23   Page 21 of 21

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

Dated: October 19, 2023

*s/ Emily C. Finestone*
Emily C. Finestone

17