**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| ROBERT BAER and ALFRED O'MEARA, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>SHIFT4 PAYMENTS, INC., and JARED ISAACMAN,<br><br>        Defendants. | Case No. 5:23-cv-03206-JFL<br><br>Hon. Joseph F. Leeson, Jr.<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' AMENDED COMPLAINT**

TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ........................................................................................................1

II.     ARGUMENT..............................................................................................................3

        A.    The Opposition Confirms Plaintiffs' Failure To Plead Material Falsity ................3

              1.    The Customer Acquisition Cost Statements Were Not Materially
                    False ...........................................................................................................3

              2.    The Distributor Acquisition Statements Were Not Materially False...........8

        B.    The Opposition Demonstrates That Plaintiffs Have Not Pled A "Strong
              Inference" Of Scienter, And The Nonculpable Inference Is More
              Compelling.......................................................................................................10

        C.    Plaintiffs' Loss Causation Theory Fails Because Neither Stock Price
              Decline Was Triggered By The Correction Of Any Challenged Statement..........14

        D.    Plaintiffs' "Scheme Liability" Claim Does Not Save The Amended
              Complaint.........................................................................................................15

III.    CONCLUSION..........................................................................................................15

TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alberici v. Recro Pharma, Inc.*,
    2020 WL 806719 (E.D. Pa. Feb. 14, 2020) ............................................................ 12

*Barbee v. Amira Nature Foods, Ltd.*,
    2023 WL 4627744 (D.N.J. July 19, 2023) ............................................................... 8

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ................................................................................................. 9

*Bauer v. Eagle Pharms.*,
    2017 WL 2213147 (D.N.J. May 19, 2017) ........................................................ 11, 12

*Bush v. Blink Charging Co.*,
    2023 WL 8263037 (S.D. Fla. Nov. 27, 2023) .......................................................... 9

*City of Edinburgh Council v. Pfizer, Inc.*,
    754 F.3d 159 (3d Cir. 2014) ................................................................................... 13

*Connor v. Unisys Corp.*,
    2024 WL 387633 (E.D. Pa. Feb. 1, 2024) .............................................................. 13

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ................................................................................................. 1

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017) ..................................................................... 6

*Hemmer Grp. v. Sw. Water Co.*,
    527 Fed. App'x 623 (9th Cir. 2013) ........................................................................ 7

*Hunt v. Bloom Energy Corp.*,
    2021 WL 4461171 (N.D. Cal. Sept. 29, 2021); .................................................... 4, 6

*In re Banc of Cal. Sec. Litig.*,
    2017 WL 3972456 (C.D. Cal. Sept. 6, 2017) .......................................................... 9

*In re Barrick Gold Corp. Sec. Litig.*,
    341 F. Supp. 3d 358 (S.D.N.Y. 2018) ................................................................... 14

*In re Bio-Tech. Gen. Corp. Sec. Litig.*,
    380 F. Supp. 2d 574 (D.N.J. 2005) ...................................................................... 5, 7

*In re Bradley Pharmaceuticals, Inc. Securities Litigation*,
    421 F. Supp. 2d 822 (D.N.J. 2006) .......................................................................... 8

TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)......................................................................................... 13

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
    2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ........................................................... 11

*In re Egalet Corp. Sec. Litig.*,
    340 F. Supp. 3d 479 (E.D. Pa. 2018), *aff'd* 802 Fed. App'x 738 (3d Cir. 2020).................... 11

*In re Hain Celestial Grp. Inc. Sec. Litig.*,
    2022 WL 18859055 (E.D.N.Y. Nov. 4, 2022)........................................................... 14

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
    2015 WL 4469143 (D.N.J. July 22, 20215)............................................................... 13

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
    2017 WL 1536223 (D.N.J. Apr. 27, 2017), *aff'd sub nom.*, 905 F.3d 106 (3d
    Cir. 2018) .......................................................................................................... 3, 4, 6, 7

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007) ............................................................................ 7

*In re Loewen Group, Inc.*,
    2003 WL 22436233 (E.D. Pa. July 16, 2003)............................................................ 9

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002)..................................................................................... 5

*In re Ocugen, Inc. Sec. Litig.*,
    659 F. Supp. 3d 572 (E.D. Pa. 2023), *aff'd*, 2024 WL 1209513 (3d Cir. Mar.
    21, 2024) ................................................................................................................. 9

*In re Omnicom Grp., Inc. Sec. Litig.*,
    541 F. Supp. 2d 546 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010) ........................... 15

*In re Rackable Sys., Inc. Sec. Litig.*,
    2010 WL 3447857 (N.D. Cal. Aug. 27, 2010) ....................................................... 12

*In re Ravisent Techs., Inc. Sec. Litig.*,
    2004 WL 1563024 (E.D. Pa. July 13, 2004)............................................................. 5

*In re Vantive Corp. Secs. Litig.*,
    283 F.3d 1079 (9th Cir. 2002) .................................................................................. 5

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011).................................................................... 12

TABLE OF AUTHORITIES
(continued)

Page(s)

*Kraft v. Third Coast Mistream*,
2021 WL 860987 (S.D.N.Y. Mar. 8, 2021) .............................................................. 9

*Long Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020) ...................................................................... 9

*Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*,
363 F. Supp. 3d 476 (D. Del. 2019) ....................................................................... 10

*McIntire v. China MediaExpress Holdings, Inc.*,
927 F. Supp. 2d 105 (S.D.N.Y. 2013) ..................................................................... 10

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015) .............................................................................................. 3, 4

*Peifa Xu v. Gridsum Holding Inc.*,
2020 WL 1508748 (S.D.N.Y. Mar. 30, 2020) .......................................................... 7

*Roofer's Pension Fund v. Papa*,
2018 WL 3601229 (D.N.J. July 27, 2018) ............................................................ 4, 14

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
351 F. Supp. 3d 874 (E.D. Pa. 2018) .................................................................... 7, 14

*Shapiro v. UJB Fin. Corp.*,
964 F.2d 272 (3d Cir. 1992) .................................................................................... 7

*Tabak v. Canadian Solar Inc.*,
549 Fed. App'x 24 (2d Cir. 2013) ............................................................................ 6

*Tanaskovic v. Realogy Holdings Corp.*,
2021 WL 211049 (D.N.J. Jan. 21, 2021) .............................................................. 5, 6

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
551 U.S. 308 (2007) ....................................................................................... 1, 2, 10

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ............................................................................... 10

*Yaroni v. Pintec Tech. Holdings Ltd.*,
600 F. Supp. 3d 385 (S.D.N.Y. 2022) ...................................................................... 7

*Zheng v. Pingtan Marine Enter. Ltd.*,
379 F. Supp. 3d 164 (E.D.N.Y. 2019) .................................................................... 15

TABLE OF AUTHORITIES
(continued)

Page(s)

*Zhou v. NextCure, Inc.*,
    2023 WL 4493541 (S.D.N.Y. July 12, 2023) ............................................................... 8

## I.    INTRODUCTION

Plaintiffs' Opposition rehashes the claims in the Amended Complaint but does not meaningfully engage with Defendants' explanation for why Plaintiffs do not meet the high bar for pleading securities fraud under the PSLRA and Rule 9(b).  Plaintiffs have not adequately pled a material misstatement, much less the required "strong inference" that Defendants made such a statement with intent to deceive (*i.e.*, scienter), or that Plaintiffs' alleged losses were caused by the revelation of the "truth" about a previously concealed fraud.  *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 314, 323-24 (2007); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).  Just one of these failures requires dismissal; the Amended Complaint fails at least three times over.

**No Materially False Statement:**  The Opposition does not identify "with particularity" facts demonstrating that any challenged statement was materially false at the time it was made, as the heightened pleading requirements here demand.  *Tellabs*, 551 U.S. at 323-24.  Plaintiffs' challenge to the Customer Acquisition Cost Statements is pure fraud-by-hindsight, which is not sufficient under the PSLRA:  Plaintiffs rely solely on a technical adjustment that moved costs from one sub-line item to another, without affecting total costs, net cash flows or any top-line financial metric.  They offer zero facts suggesting that Defendants disbelieved or lacked a reasonable basis for their original cost categorization, especially given that categorization had been used for years (including in Shift4's IPO filings with the SEC), was blessed by independent auditors, and was never previously questioned by the SEC.  And Plaintiffs' challenge to the Distributor Acquisition Statements ignores that the supposedly omitted information—the impact on EBITDA from the distributor acquisitions—was disclosed.  *Compare* AC ¶ 99 *with* Ex. 12 at 14.  Faced with this black-and-white disclosure, Plaintiffs allege that Blue Orca (a short seller with an avowed interest in driving down Shift4's stock price) and CW3 quibbled with Defendants' motives for the

distributor acquisitions and that an anonymous witness called some of the acquired distributors "low quality" because they were small businesses or had older websites.  Even if these hearsay opinions constituted facts (and they do not), they do not render Defendants' statements fraudulent.

**No Scienter:**  Under *Tellabs*, the Court must conduct a unique analysis to determine whether Plaintiffs adequately have pled the required "strong inference" of scienter.  It must consider not only Plaintiffs' theory, but also weigh "competing inferences rationally drawn from the facts alleged" to assess whether Plaintiffs' desired inference that Defendants acted with an intent to deceive is "cogent and at least as compelling" as the nonculpable inference.  *Tellabs*, 551 U.S. at 314.  Here, Plaintiffs' primary scienter theory is that Mr. Isaacman's margin loan could have been called at some point in 2022 if Shift4's stock price fell too low.  This does not even make sense: why would Mr. Isaacman misclassify (but still fully disclose) customer acquisition costs starting from at least Shift4's IPO in 2020 and then conceal the motives for acquiring distributors (while again fully disclosing the accounting impact) to avoid a hypothetical call on a margin loan (a loan that was also fully disclosed in the financial statements) that he indisputably could have repaid, given that he is a billionaire?  The timeline further undermines Plaintiffs' theory:  Mr. Isaacman waited until *after* the cost restatement was completed before re-negotiating the margin loan.  And Plaintiffs' grab bag of other cynical speculation falls far short of their heavy burden to plead a strong inference that Defendants made the challenged statements to defraud investors.  The nonculpable inference—that Shift4 and Mr. Isaacman believed the statements when they made them and appropriately updated investors as information changed—is far more compelling than Plaintiffs' dramatized and unsupported conspiracy theory.

**No Loss Causation:**  Plaintiffs have not adequately pled loss causation with respect to either of two stock price declines at issue because neither decline was triggered by the revelation

2

of a previously undisclosed "truth" correcting a challenged statement.  The first decline followed the announcement that Shift4 would restate customer acquisitions costs—but when the restatement itself occurred, Shift4's stock price *increased*.  The other decline followed short-seller Blue Orca's publishing its negative opinions, which were admittedly offered with a motive to drive down Shift4's stock price and did not correct any challenged statement, let alone reveal any "truth."

Finally, Plaintiffs cannot avoid these failures by repackaging their Section 10(b) claim as "scheme liability."  To the extent the "scheme" they posit overlaps with their Section 10(b) claim, it fails for the same reasons above.  To the extent the "scheme" is based on Mr. Isaacman's comment about being "a buyer" of Shift4 stock, it still overlaps with the Section 10(b) claim and, in any event, Plaintiffs misrepresent what Mr. Isaacman said and rely on the same nonsensical margin loan conspiracy theory that does not come close to a strong inference of scienter.

Defendants respectfully submit that the Amended Complaint should be dismissed.

## II.    ARGUMENT

### A.    The Opposition Confirms Plaintiffs' Failure To Plead Material Falsity

#### 1.    The Customer Acquisition Cost Statements Were Not Materially False

Plaintiffs offer no response to the courts that consider accounting judgments like those in the Customer Acquisition Cost Statements to be opinions—cases that require pleading not only that statements were objectively false when made, but *also* that defendants either did not believe the opinions or lacked a reasonable basis to believe them.  *Compare* Opp. at 12-13 *with, e.g.*, *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *11-12 (D.N.J. Apr. 27, 2017), *aff'd sub nom.*, 905 F.3d 106 (3d Cir. 2018) (accounting entry is "subjective" where it involved choosing among "a range of possible treatments instead of a single objective set of calculations"); *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183-85 (2015).

Plaintiffs' falsity theory relies only on a restatement that moved certain costs a few lines down Shift4's cash flow statement without impacting total costs or overall cash flows.  That fails to show that the statements were objectively false at all when made, much less materially false.  And Plaintiffs do not even try to plead *facts* indicating Defendants disbelieved or lacked a reasonable basis to believe the audited financial statements when they were issued.

Plaintiffs' bald assertion that the Customer Acquisition Cost Statements were not opinions is wholly unsupported; Plaintiffs' simply offer the restatement plus their own say-so that the classification did not involve any subjective judgment. Opp. at 11.  Plaintiffs "do not cite any case law supporting their theory that a restatement alone can establish that a statement is one of fact rather than of opinion," nor can they.  *Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at *8 (N.D. Cal. Sept. 29, 2021); *see also Hertz*, 2017 WL 1536223, at *11-12 (dismissing Section 10(b) claim premised on a restatement under *Omnicare*).  Setting aside Plaintiffs' lack of authority for their position, Plaintiffs *acknowledge* that classifying cash flows involves determining whether Shift4 "acquire[d] an income producing asset . . . or incur[red] an ordinary business expense." Opp. at 12.  Shift4's explanation to the SEC about customer acquisition costs reflected its belief that acquiring customers meant acquiring an "intangible asset" through a long-term relationship that will "produce revenue for Shift4 over a multi-year period," rather than a one-off cost.  *See* AC ¶ 75.  That is precisely the sort of selection among a "range of possible treatments" that renders financial statements opinions.  *Hertz*, 2017 WL 1536223, at *11-12; *Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *10 (D.N.J. July 27, 2018) (dismissing 10(b) claim where classifying "royalty stream" as an "intangible asset" versus a "financial asset" was an opinion).[1]

---

[1] Plaintiffs attempt to avoid *Hertz* by asserting that cashflow categories are objective.  Opp. at 13 n.6.  But classifying customer acquisition costs requires a subjective assessment of whether costs could be intangible "assets held for or used in the production of goods or services."  AC ¶¶ 70, 75.

4

As to objective falsity, Plaintiffs offer nothing more than the fact of the restatement and their own conclusory assertion that the prior classification "lacked any basis" because (with the benefit of hindsight) Plaintiffs view the costs as akin to "sales commissions or performance bonuses" that "do not generate income." Opp. at 12. But piggybacking on the SEC's new approach is not enough to meet the PSLRA's heightened requirements for pleading that a statement was objectively false when made—indeed, this is the "the exact type of 'fraud by hindsight' argument that the Third Circuit has long rejected as improper." *Tanaskovic v. Realogy Holdings Corp.*, 2021 WL 211049, at *6 (D.N.J. Jan. 21, 2021); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) ("To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events."); *cf. In re Vantive Corp. Secs. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002) (stating that the "purpose of this heightened pleading requirement was . . . to put an end to the practice of pleading 'fraud by hindsight'"). Plaintiffs do not point to any SEC guidance at the time of the original statements indicating that customer acquisition costs were *not* investments in long-term intangible assets that generate revenues over time, *see* Ex. 7 at 4-5, and therefore were inappropriately classified.[2] Particularly where the restatement simply moved costs within an accounting category without changing any top-line number, a restatement alone is not enough to show that the statements were

---

[2] Plaintiffs' cited authorities involve companies using accounting practices directly contrary to their own or the SEC's existing policies, not reacting to new information from the SEC, as Defendants did here. *See* Opp. at 10-11 (citing *In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 580, 586 (D.N.J. 2005) (defendant adopted accounting practice contrary to "SEC staff interpretation of applicable GAAP"); *In re Ravisent Techs., Inc. Sec. Litig.*, 2004 WL 1563024, at *5 (E.D. Pa. July 13, 2004) (company did not follow its own stated revenue recognition policy)).

5

objectively, materially false.[3]  *See*, *e.g.*, *Hunt*, 2021 WL 4461171, at *8 (dismissing Section 10(b) claim based on a restatement for failure to plead material falsity).

As to subjective falsity, Plaintiffs offer no fact suggesting Defendants "did not genuinely believe" customer acquisition costs to be investments in long-term intangible assets that generate revenues over time.  *Hertz,* 2017 WL 1536223, at *12; *Tanaskovic,* 2021 WL 211049, *20 (finding no liability for opinion statements where plaintiffs failed to "point to specific facts that demonstrate that Defendants lacked a reasonable basis for their opinions").[4]  In fact, Plaintiffs admit that "the Company *only* restated its financials *in response to the SEC's questions* regarding its classification of customer acquisition costs."  Opp. at 21 (emphasis added).  And Plaintiffs have no response to the Shift4's express affirmation of its belief in the propriety of the classification in its correspondence to the SEC.  Mot. at 11-12 (Shift4 informed the SEC that it "believe[d] its capitalized acquisition costs . . . [were] properly classified as investing activities").

Even if Plaintiffs had shown that the Customer Acquisition Cost Statements were both objectively and subjectively false, any falsity is plainly immaterial.  To assess materiality, courts must look to the effect of the restatement on the company's "total operations."  *Tabak v. Canadian Solar Inc.*, 549 Fed. App'x 24, 27 (2d Cir. 2013); *Peifa Xu v. Gridsum Holding Inc.*, 2020 WL

---

[3]  The cases Plaintiffs cite demonstrate the sort of facts that must be pled to plead material falsity in the restatement context—the sort of facts that are absent from the Amended Complaint.  *See* Opp. at 13 (citing *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 545 (S.D.N.Y. 2017) (material falsity adequately pled where company's audit committee admitted that restatement was due to management "misconduct" in making accounting determinations); *Underland v. Alter*, 2012 WL 2912330, at *5 (E.D. Pa. July 16, 2012) (same where plaintiff alleged facts showing company failed to verify required factors for loan loss reserve); *In re Wilmington Trust Sec. Litig.*, 29 F. Supp. 3d 432, 452-53 (D. Del. 2014) (same where plaintiff pled facts showing company improperly waived past due loans, causing loan loss reserves to violate GAAP)).

[4]  Plaintiffs try to distinguish *Tanaskovic* by claiming to have alleged subjective falsity, but Plaintiffs admit that Shift4 explained its belief that its accounting position was correct to the SEC and offer no contrary facts; they merely label Shift4's explanation "hollow."  Opp. at 12.

6

1508748, at *9 (S.D.N.Y. Mar. 30, 2020) (refusing to consider plaintiffs' claim of materiality "based on the change in the line item alone").  The restatement here moved previously disclosed numbers to another sub-line item a few lines down on Shift4's cash flow statement, and Plaintiffs do not dispute that Shift4's "total operations" financial metrics did not change:  total cash flows stayed the same, total costs stayed the same, revenues stayed the same.[5]  Plaintiffs make no effort to distinguish this case from any of Defendants' cited cases dismissing on materiality grounds in similar circumstances.  Mot. at 12-13; *Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 402 (S.D.N.Y. 2022) (dismissing for lack of material falsity where profits remained the same after restatement); *Peifa Xu*, 2020 WL 1508748, at *8-9 (58.4% change to line item was immaterial when considered in context).[6]  That any difference between the original and restated costs was immaterial is confirmed by the fact that Shift4's stock price did not "experience[] any notable downward fluctuation" when the restatement was published.  *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 375 (D.N.J. 2007) (granting dismissal for lack of material falsity); *see also SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 903 (E.D. Pa. 2018) ("[I]f the price does not fall or falls only negligibly, the information is deemed immaterial.").[7]  On the contrary, Shift4's stock price *increased* the day the restated financials were published.  Ex. 4.

---

[5] Plaintiffs would find no help in pivoting to the restatement's boilerplate comment on Shift4's internal controls:  "it is not a violation of the securities laws to simply fail to . . . provide sufficient internal controls." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 283 (3d Cir. 1992); *Hertz*, 2017 WL 1536223, at *17 (dismissing challenged statements about internal controls).

[6] *Hemmer* (Opp at 14), is inapposite because it involved "massive" "downward revisions" of up to 100% of previously reported net income, but Shift4's technical restatement did not impact *any* top-line revenue metric.  *Hemmer Grp. v. Sw. Water Co.*, 527 Fed. App'x 623, 626 (9th Cir. 2013); *see also Bio-Tech.*, 380 F. Supp. 2d at 586 (Opp. at 13-14) (sales and revenues were restated).

[7] Even on October 21, 2022, when the forthcoming restatement was announced (without revealing the actual restated financials themselves), Shift4's stock price declined just 2.67% and quickly recovered.  This case differs from *In re Bradley Pharmaceuticals, Inc. Securities Litigation* (Opp.

2.      The Distributor Acquisition Statements Were Not Materially False

It is difficult to discern exactly what Plaintiffs think was false about the Distributor Acquisition Statements, but whatever their theory, they lack any particularized facts demonstrating material falsity.  In their Opposition, Plaintiffs parrot the self-serving accusations of short-seller Blue Orca to call into question Shift4's motivations for acquiring distributors, arguing that it was a ploy to increase EBITDA.  Opp. at 15-17.  But the full impact on EBITDA was disclosed, Ex. 12 at 14, and Plaintiffs offer nothing actually inconsistent with Shift4's stated rationales for acquiring the distributors, *i.e.*, (a) improving control over the customer experience, (b) improving unit economics, (c) motivating and energizing the sales force to sell the Company's SkyTab solution, and (d) broadening Shift4's ability to develop new relationships and to "handle all aspects of installation, service, and support."  Mot. at 4-5.  That a short seller had some negative opinions and one anonymous low-level employee thought certain distributors were "low quality" and personally did not believe the acquisitions were necessary does not come close to meeting Plaintiffs' pleading burden to establish securities fraud.

First, Plaintiffs' claim that Shift4 really acquired distributors to inflate EBITDA ignores that Shift4 *disclosed* the impact on EBITDA, and it thus fails.  Mot. at 14-15; Ex. 12 at 14; *Barbee v. Amira Nature Foods, Ltd*., 2023 WL 4627744, *13 (D.N.J. July 19, 2023) (dismissing 10(b) claim on falsity grounds where defendant "already disclosed" the pertinent information); *Zhou v. NextCure, Inc*., 2023 WL 4493541, at *11 (S.D.N.Y. July 12, 2023) (same).

Second, Blue Orca's and CW3's subjective views about the quality or necessity of the acquisitions are not relevant to the Distributor Acquisition Statements, let alone sufficient to plead

---

at 15), where the announcement of the restatement caused a delay of the earnings release and the stock plummeted 26.4%.  421 F. Supp. 2d 822, 829 (D.N.J. 2006).

they are untrue.  Mot. at 15 (citing *In re Loewen Group, Inc.*, 2003 WL 22436233, *13 (E.D. Pa. July 16, 2003) ("there can be no securities fraud liability for a true statement"); *Kraft v. Third Coast Mistream*, 2021 WL 860987, *13 (S.D.N.Y. Mar. 8, 2021) (rejecting claim that defendant "was acting for alternative, undisclosed and nefarious reasons" as insufficient to plead falsity)). Plaintiffs are required to allege with particularity that Defendants omitted a material *fact* that a reasonable investor would have viewed as "as having significantly altered the 'total mix' of information made available."  *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).  Blue Orca's and CW3's opinions are not fact, and they certainly aren't material.  Plaintiffs have not alleged that a few distributors being "mom and pop" businesses or having older websites bears at all on whether those businesses had strong customer relationships or other intangible assets that Shift4 was motivated to acquire.  They simply assert that they were "low quality" based on a cursory review of a few websites.  *See In re Ocugen, Inc. Sec. Litig.*, 659 F. Supp. 3d 572, 592 (E.D. Pa. 2023), *aff'd*, 2024 WL 1209513 (3d Cir. Mar. 21, 2024) (Opp. At 24) (rejecting allegations as "speculative and rooted in conjecture rather than in fact" as insufficient under the PSLRA).

Third, Plaintiffs' only purported support for the falsity of the Distributor Acquisition Statements is unreliable.  Blue Orca admitted a pecuniary interest in driving down Shift4's stock price in connection with publishing its negative spin on public information.  Ex. 1 at 1, 39.  And Plaintiffs blindly parrot Blue Orca's allegations without purporting to have ever spoken to Blue Orca or having done any investigation to validate Blue Orca's claims.  *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 804 (S.D.N.Y. 2020).[8]  And Plaintiffs offer no support for why CW3—

---

[8]  Plaintiffs' cases (Opp. at 17) relying on short-seller reports are distinguishable.  *Bush v. Blink Charging Co.*, 2023 WL 8263037, at *10 (S.D. Fla. Nov. 27, 2023) (crediting short-seller report that "did more than simply report information already known by the market"); *In re Banc of Cal. Sec. Litig.*, 2017 WL 3972456, at *4-7 (C.D. Cal. Sept. 6, 2017) (finding blog post connecting a

admitted to be a low-level financial analyst at Shift4 who performed "basic financial functions," Opp. at 16—would have been in a position to assess the overall merit of Shift4's distributor acquisition strategy.  Plaintiffs also do not explain why CW3's opinion about the utility of the distributor acquisitions renders Shift4's rationale false.[9]  Mot. at 16; *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021) (rejecting reliance on CW who did not believe management's goal of producing 5,000 cars was possible where plaintiffs did not allege management shared that view).

### B.    The Opposition Demonstrates That Plaintiffs Have Not Pled A "Strong Inference" Of Scienter, And The Nonculpable Inference Is More Compelling

Setting aside Plaintiffs' dramatic rhetoric, they still do not come close to pleading facts that raise a "strong inference" that Defendants intended to deceive investors.  Plaintiffs' burden is particularly stringent given Congress's desire to avoid "abuses" of "nuisance" securities litigation: they must allege an inference of scienter that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314, 320.  Plaintiffs primarily hypothesize Mr. Isaacman may have faced a margin loan threat in 2022 and had certain financial contracts coming due in 2023, and therefore he misclassified Shift4's customer acquisition costs (since 2020 and prior to entering into the margin loan) and misrepresented the purpose of acquiring third-party distributors.  That does not pass the red-face test.  In the Opposition, Plaintiffs mount a last-ditch effort to (1) dramatize a CFO's departure after he signed the very financial statements Plaintiffs challenge, (2) inflate the

---

company official to convicted criminal to be reliable, where the company "failed to disclose" the connection); *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 115-16 (S.D.N.Y. 2013) (crediting short-seller report that alleged a 464% revenue overstatement based on independent survey of defendant's vehicles that revealed defendant lied about corporate deals).

[9]  *Navient* (Opp. at 17) is inapposite.  There, plaintiffs alleged the CW was directly instructed to participate in the misconduct.  *Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, 363 F. Supp. 3d 476, 492-93 (D. Del. 2019).  Plaintiffs do not allege CW3 ever interacted with Mr. Isaacman.

importance of CW3 who never spoke with Mr. Isaacman or was even close to being in a position to assess the strategic rationale of the distributor acquisitions, and (3) misrepresent Mr. Isaacman's comment about being a potential buyer of Shift4 stock, but these do not meet Plaintiffs' burden of pleading particularized facts of an intent to defraud either. *See, e.g.*, *In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *15 (S.D.N.Y. Mar. 30, 2021) (granting dismissal on scienter grounds because "zero plus zero (plus zero plus zero plus zero) cannot equal one").

**Margin Loan.** Plaintiffs assert (without support) that Mr. Isaacman faced a threat to his margin loan in 2022, thus motivating him to have supposedly caused Shift4 to misclassify customer acquisition costs since at least 2020 and to misrepresent the reason for distributor acquisitions. Opp. at 18-19. Besides pleading no fact suggesting Mr. Isaacman's loan was ever close to a call, Plaintiffs also allege no facts suggesting Mr. Isaacman, a billionaire, could not have repaid the loan. A loan—especially one that is fully disclosed in the financial statements—does not establish scienter. Mot. at 20; *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 512 (E.D. Pa. 2018), *aff'd* 802 Fed. App'x 738 (3d Cir. 2020) ("[I]t is well-settled that ordinary business motives such as the need to obtain credit are general business motives that do not support an inference of scienter."); *Bauer v. Eagle Pharms.*, 2017 WL 2213147, at *7 (D.N.J. May 19, 2017).

Plaintiffs' reliance on the supposed margin loan threat is particularly implausible with respect to the Customer Acquisition Cost Statements. Opp. at 5-6. Plaintiffs cannot explain how a hypothetical call in 2022 would have motivated Mr. Isaacman to allegedly misstate Shift4's public financial statements starting in 2020, much less to *restate* those financial statements in November 2022 *before* renegotiating his loan in December 2022.[10] Mot. at 19-20. Plaintiffs'

---

[10] The negligible impact of the restatement, which did not impact any top-line financial metric, further undermines any inference of scienter. *Plumbers & Pipefitters Loc. Union No. 719 Pension*

theory based on variable prepaid forward contracts ("VPFs") similarly makes no sense. Opp. at 20. Plaintiffs fail to explain how contracts due sometime in 2023 would be motive to commit fraud in financial statements from 2020 onward (restated in 2022), distributor acquisitions completed in 2022, or statements made months before the VPF's were due to settle.

**CW3.** Plaintiffs hardly attempt to rehabilitate their deficient CW allegations. They have no response for the fact that CW3 is never alleged to have spoken with Mr. Isaacman. *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011) (rejecting CWs who never "met the Individual Defendants" as unreliable); *In re Rackable Sys., Inc. Sec. Litig.*, 2010 WL 3447857, at *9 (N.D. Cal. Aug. 27, 2010) (rejecting CW allegations when they had no "communication with any of the defendants"). And Plaintiffs do not contend that CW3 ever shared his views with Mr. Isaacman. *Alberici v. Recro Pharma, Inc.*, 2020 WL 806719, at *18 (E.D. Pa. Feb. 14, 2020) (finding lacking scienter absent allegation that defendants attended meetings "at which [CW] purportedly articulated the[ir] concerns"). Mr. Isaacman's telling Shift4 employees about the distributor acquisitions being part of Shift4's "progression" sometime in 2022, Opp. at 16, does not undermine the Distributor Acquisition Statements at all, let alone rise to a particularized fact indicating they were knowingly false when they were made. Mot. at 15-16.

**CFO Departure.** Plaintiffs claim Shift4's former CFO "abruptly resigned," which somehow supports scienter. Opp. at 20. But Plaintiffs plead no facts supporting that Mr. Herring's departure was "abrupt." *Bauer*, 2017 WL 2213147, *7 (rejecting speculation and conjecture). And more importantly, Plaintiffs ignore that Mr. Herring signed Shift4's financial statements containing the Customer Acquisition Cost Statements two days *after* announcing his departure,

---

*Tr. Fund v. Conseco Inc.*, 2011 WL 1198712, *22 (S.D.N.Y. Mar. 30, 2011) (dismissing where lack of scienter "is especially true in light of the modest size of the restatement").

Ex. 5 at 54, undermining any theory that he left due to the classification of customer acquisition costs. *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2015 WL 4469143, at \*21 (D.N.J. July 22, 20215) (holding "it is unreasonable to infer fraudulent intent based simply on the date of an executive's resignation").

**"I'm A Buyer" Statement.**  Plaintiffs next argue Mr. Isaacman's scienter is shown by his statement that he is "a buyer" for Shift4 stock when he did not purchase stock for six months.  Opp. at 19.  But Plaintiffs misrepresent Mr. Isaacman's statement, which was that he was "a buyer . . . *if* [the market price] makes it too easy" to take Shift4 "private again."  Ex. 16 at 11 (emphasis added).  He said "we'll look at share price the same as anyone else, if it gets too odd, then we'll see what we can do." *Id.* at 12.  Plaintiffs may not selectively misrepresent a defendant's public statements. *See City of Edinburgh Council v. Pfizer, Inc*., 754 F.3d 159, 169 (3d Cir. 2014); *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997) (requiring review of full context of challenged statements).  Here, context makes clear Mr. Isaacman was referring to taking Shift4 private if market economics made sense, not lying about making open-market purchases.

**"Boys Club."**  Plaintiffs vaguely reference a purported "boys club" at Shift4.  Opp. at 20-21.  But Plaintiffs do not respond to the fact that CW1 and CW2 are not alleged to have interacted with Mr. Isaacman or to know who his "friends" are.  Mot. at 25.  Nor do Plaintiffs explain how an alleged "boys club" undermines any challenged statement or establishes an intent to defraud.

**Access To Information.**  Finally, Plaintiffs argue Mr. Isaacman generally had access to information.  Opp. at 20-21.  But Plaintiffs must allege with particularity *what* information Mr. Isaacman actually accessed that undermined a challenged statement when made. *Connor v. Unisys Corp.*, 2024 WL 387633, at \*11 (E.D. Pa. Feb. 1, 2024) (rejecting scienter where plaintiffs did not allege "specifically" what information Defendants knew); *cf. SEB*, 351 F. Supp. 3d at 906 (Opp.

13

at 21) (finding defendants' access to "negative data that contradicted their public statements" sufficient to allege scienter).[11]

**The Nonculpable Inference Is More Compelling.**  The Opposition ignores the more compelling, non-fraudulent inference that Shift4 believed in the accuracy of its audited financial statements and the merit of the distributor acquisitions.  Mot. at 20-21; *Roofer's*, 2018 WL 3601229, at *19 ("unqualified [audit] opinions" undermine inference of scienter).  And Plaintiffs ignore that no Defendant sought to capitalize on the alleged fraudulent scheme. *In re Hain Celestial Grp. Inc. Sec. Litig.*, 2022 WL 18859055, at *26 (E.D.N.Y. Nov. 4, 2022) (finding lack of profit motive negated inference of scienter).  These circumstances far outweigh any fraudulent inference.

### C.    Plaintiffs' Loss Causation Theory Fails Because Neither Stock Price Decline Was Triggered By The Correction Of Any Challenged Statement

Plaintiffs' claims additionally fail because neither "corrective disclosure" revealed some previously undisclosed *truth* about any challenged statement or caused a sustained decline in Shift4's stock price.  Mot. at 22-23.  First, Plaintiffs cite the October 21, 2022 announcement of a forthcoming restatement, but that did not *correct* the Customer Acquisition Cost Statements.  Mot. at 22.  To the extent the Customer Acquisition Cost Statements were "corrected," that happened on November 8, 2022, when Shift4 published restated financial statements.  Far from causing a loss, the November 8 restatement triggered an *increase* in Shift4's stock price.  Ex. 4.

Second, Plaintiffs point to the Blue Orca Report, but this is not "corrective" either because it is based entirely on public information and revealed nothing but Blue Orca's subjective (and self-interested) opinions.  *Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 178

---

[11] Plaintiffs' cited case (Opp. at 21) illustrates what is missing in this case.  *SEB*, 351 F. Supp. 3d at 906-07.  In *SEB*, defendant was "regularly reviewing" data that contradicted its public statements.  *Id* at 905.  Here, Plaintiffs do not allege *any* contradictory information, let alone that Mr. Isaacman reviewed such information.  Mot. at 17.

(E.D.N.Y. 2019) (finding failure to plead loss causation because a short-seller report "did not reveal any undisclosed information" and "relied on public information"). Plaintiffs' suggestion that Blue Orca's "research" involved non-public matters, Opp. at 23-24, cannot stand in the face of Blue Orca's admission that its "opinions" were based on publicly available information. Ex. 1 at 39; Mot. at 23. In any event, Blue Orca's opinion about the quality of the websites of six distributors is not even inconsistent with any challenged statement, let alone corrective. *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010) (stating that "where a disclosure does not reveal the falsity of the alleged misstatements, it does not qualify as 'corrective'").

### D. Plaintiffs' "Scheme Liability" Claim Does Not Save The Amended Complaint

Plaintiffs try to defend their "scheme liability" claim, but they cannot overcome their concession that it cannot be based on the same "conduct" as their Section 10(b) claim. Opp. at 25. Plaintiffs allege just one (nonsensical) "scheme"—*i.e.*, that Mr. Isaacman engaged in fraud since at least 2020 to inflate Shift4's stock price to avoid a hypothetical threat at some point in 2022 to a disclosed margin loan that he indisputably could have repaid—and it fails. *See Lucent*, 610 F. Supp. 2d at 358-59 (holding scheme liability claims must be separate from 10(b) claims). Though Plaintiffs highlight Mr. Isaacman's December 7, 2022 statement about buying Shift4 stock, that statement was squarely part of their Section 10(b) scienter theory, *see* AC ¶ 65, and, in any event, is blatantly misrepresented by Plaintiffs, *supra* at 13. Notably, Plaintiffs' case citation for scheme liability actually *dismissed* a scheme liability claim based on the plaintiffs' "selective reading" of the challenged statements. *See* Opp. at 25 (citing *Ocugen*, 659 F. Supp. 3d at 597 (granting motion to dismiss)). Plaintiffs' meritless scheme liability claim should meet the same fate.

### III. CONCLUSION

Defendants request that the Court dismiss the Amended Complaint in its entirety.

Dated:  April 19, 2024

**FITZPATRICK LENTZ & BUBBA, P.C.**

*/s/ Joshua A. Gildea*
Joshua A. Gildea (SBN 205911)
Two City Center
645 West Hamilton Street, Suite 800
Allentown, Pennsylvania 18101
Telephone: (610) 797-9000
jgildea@flblaw.com

**LATHAM & WATKINS LLP**
Melanie M. Blunschi (admitted *pro hac vice*)
Daniel R. Gherardi (admitted *pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
melaine.blunschi@lw.com
daniel.gherardi@lw.com

Benjamin Naftalis (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
benjamin.naftalis@lw.com

*Attorneys for Defendants*

16