## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ROBERT BAER, Individually and on Behalf of All Others Similarly Situated, | Case No. 5:23-cv-03206-JFL |
| Plaintiff, | Hon. Joseph F. Leeson, Jr. |
| v. | **ORAL ARGUMENT REQUESTED** |
| SHIFT4 PAYMENTS, INC., and JARED ISAACMAN, | |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

TABLE OF CONTENTS

Page(s)

Table of Authorities ................................................................................................. ii

I.     INTRODUCTION .............................................................................................1

II.    PLAINTIFF STILL DOES NOT PLEAD A STRONG INFERENCE OF SCIENTER ......................................................................................................2

    A.    Plaintiff's Opposition Underscores That His Motive Theory Makes No Sense ......................................................................................................2

        1.    Plaintiff's Timing Allegations Are Irreconcilable with Fraud....................2

        2.    Mr. Isaacman's Standard Equity Compensation Does Not Support a Strong Inference of Scienter....................................................................4

        3.    Plaintiff's Motive Theory Is Irreconcilable With Reality...........................7

    B.    Mr. Isaacman's Title Does Not Support A Strong Inference Of Scienter ...............8

    C.    The Opposition Repeats The Same Allegations About Shift4's CFO Departure That The Court Has Rejected....................................................................9

    D.    The Opposition Still Does Not Tie "Boys' Club" Allegations To Any Purported Fraudulent Inference .................................................................9

    E.    The Opposition Confirms That Plaintiff's Allegations Of "Suspicious" Activity At Third Parties Are Vague And Irrelevant............................................10

    F.    The Opposition Continues To Misrepresent The Restatement's Magnitude.........11

    G.    Plaintiff Still Does Not Support A Core Operations Theory Of Scienter..............12

    H.    The Opposition Does Not Overcome The Far More Compelling Nonfraudulent Inference .................................................................13

III.    CONCLUSION................................................................................................13

TABLE OF AUTHORITIES

<u>Page(s)</u>

## Table of Authorities

### CASES

*Bauer v. Eagle Pharms. Inc.*,
2017 WL 2213147 (D.N.J. May 19, 2017) ............................................................................ 4

*Bodnar v. Amco Ins. Co.*,
2014 WL 3428877 (M.D. Pa. July 11, 2014)......................................................................... 8

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004).................................................................................................. 5

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)................................................................................................ 11

*Frater v. Hemispherx Biopharma, Inc.*,
996 F. Supp. 2d 335 (E.D. Pa. 2014) .................................................................................... 6

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011)............................................................................. 10, 11

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004).................................................................................................. 5

*Hunt v. Bloom Energy Corp.*,
2021 WL 4461171 (N.D. Cal. Sept. 29, 2021) ...................................................................... 7

*In re AT&T Corp. Sec. Litig.*,
2002 WL 31190863 (D.N.J. Jan. 30, 2002) ........................................................................... 6

*In re Bio-Tech. Gen. Corp. Sec. Litig.*,
380 F. Supp. 2d 574 (D.N.J. 2005) ........................................................................................ 6

*In re Dig. Island Sec. Litig.*,
357 F.3d 322 (3d Cir. 2004).................................................................................................. 5

*In re Eros Int'l PLC Sec. Litig.*,
2021 WL 1560728 (D.N.J. Apr. 20, 2021) ........................................................................... 12

*In re Hain Celestial Grp. Inc. Sec. Litig.*,
2022 WL 18859055 (E.D.N.Y. Nov. 4, 2022)....................................................................... 4

*In re Hertz Glob. Holdings, Inc.*,
905 F.3d 106 (3d Cir. 2018).................................................................................... 10, 11, 12

TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Refco Sec. Litig.*,
  503 F. Supp. 2d 611 (S.D.N.Y. 2007) ............................................................... 6

*In re Synchronoss Techs., Inc. Sec. Litig.*,
  2019 WL 2849933 (D.N.J. July 2, 2019) ........................................................... 5

*In re Viropharma Inc. Sec. Litig.*,
  21 F. Supp. 3d 458 (E.D. Pa. 2014) ................................................................ 13

*In re Vivendi Universal, S.A. Sec. Litig.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003) ............................................................... 6

*In re Worldcom, Inc. Sec. Litig.*,
  294 F. Supp. 2d 392 (S.D.N.Y. 2003) (Opp. ) .................................................. 6

*Inst'l Invs. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) (Opp. ) .............................................................. 5, 6

*Kamden-Ouaffo v. Hucarro*,
  2017 WL 11724428 (D.N.J. Jan. 13, 2017) ...................................................... 8

*Kraft v. Third Coast Mistream*,
  2021 WL 860987 (S.D.N.Y. Mar. 8, 2021) ...................................................... 4

*L.L. Cap. Partners, L.P. v. Rockefeller Ctr. Props., Inc.*,
  939 F. Supp. 294 (S.D.N.Y. 1996) ................................................................... 3

*Mill Bridge V, Inc. v. Benton*,
  2009 WL 4639641 (E.D. Pa. Dec. 3, 2009) .............................................. 3, 8, 13

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp.*,
  720 F. Supp. 2d 517 (D.N.J. 2010), ................................................................. 8

*Percoco v. Deckers Outdoor Corp.*,
  2013 WL 3584370 (D. Del. 2013) ................................................................... 12

*PG Pub. Co. v. Aichele*,
  902 F. Supp. 2d 724 (W.D. Pa. 2012) .............................................................. 8

*Rahman v. Kid Brands, Inc.*,
  736 F.3d 237 (3d Cir. 2013) ............................................................................ 8

*Rosi v. Aclaris Therapeutics, Inc.*,
  2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021) ............................................. 10, 11

TABLE OF AUTHORITIES
(continued)

Page(s)

*SEC v. Goldstone*,
 2016 WL 3654273 (D.N.M. June 13, 2016) (Opp. 20) ........................................................ 7

*Tabak v. Canadian Solar Inc.*,
 549 F. App'x 24 (2d Cir. 2013) ........................................................ 5

*Tanaskovic v. Realogy Holdings Corp.*,
 2021 WL 211049 (D.N.J. Jan. 21, 2021) ........................................................ 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ........................................................ 1, 2

*Vanderhoef v. China Auto Logistics Inc.*,
 2021 WL 3260849 (D.N.J. July 30, 2021) ........................................................ 9

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
 2015 WL 3755218 (E.D. Pa. June 16, 2015) ........................................................ 9, 13

*Winer Fam. Tr. v. Queen*,
 503 F.3d 319 (3d Cir. 2007) ........................................................ 3

*Zhou v. NextCure, Inc.*,
 2023 WL 4493541 (S.D.N.Y. July 12, 2023) ........................................................ 3

**RULES**

Fed. R. Civ. Proc. 9(b) ........................................................ 4, 5, 8

## I.    INTRODUCTION

Plaintiff's Opposition changes nothing: Plaintiff still has not alleged facts demonstrating a strong, cogent, and compelling inference that Defendants made a challenged statement with intent to deceive investors, as he must to plead scienter under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).  After abandoning the bulk of the First Amended Complaint, Plaintiff focused his efforts on a hindsight attempt to plead that Defendants' disclosure of customer acquisition costs in an incorrect category (albeit with their auditor's imprimatur) was fraudulent. But considered individually or holistically, Plaintiff's laundry-list allegations do not support a finding of scienter.  Plaintiff's Opposition does not meaningfully grapple with any the arguments or authorities in Defendants' Motion to Dismiss.  Plaintiff has no response to the irreconcilable inconsistencies in the timeline underlying his motive allegations.  And, most critically, Plaintiff's Opposition ignores the Court's holdings on scienter and regurgitates virtually identical theories to those this Court has already found "difficult to square" with the chronology of events and disconnected from "*fraudulent* conduct."  Dismissal Order (Dkt. 43) at 26 (emphasis in original).

Plaintiff cannot ignore the far more compelling nonfraudulent inference: Defendants believed in their consistent classification of customer acquisition costs.  That belief was supported for years by Shift4's independent auditor, who opined that the financial statements fairly presented Shift4's "results of its operations and its cash flows."  *See, e.g.*, Ex. 5 at 80-82; Ex. 1 at F-2, F-5. And it was never questioned by the SEC until May 2022, despite Shift4's numerous financial statements incorporating the challenged classification, including its IPO documents.

Plaintiff's failure to remedy any of the deficiencies discussed in the Court's Dismissal Order is dispositive.  The Second Amended Complaint should be dismissed with prejudice.

## II.    PLAINTIFF STILL DOES NOT PLEAD A STRONG INFERENCE OF SCIENTER

Plaintiff's Opposition does not cure his failure to plead particularized facts supporting a strong inference that Defendants intended to defraud investors that is "at least as compelling as any opposing inference one could draw from the facts alleged." Dismissal Order at 11 (quoting *Tellabs*, 551 U.S. at 324). The Opposition repeats the same speculative and vague scienter allegations the Court has already rejected, and the little Plaintiff does add is untethered to any challenged statement in subject matter or timing. Plaintiff's scienter allegations remain "far less compelling than the opposing inference: Shift4 believed the classification of customer acquisition costs in the financial statement was correct." *Id*. at 26.

### A.    Plaintiff's Opposition Underscores That His Motive Theory Makes No Sense

#### 1.    Plaintiff's Timing Allegations Are Irreconcilable with Fraud

In his Opposition, Plaintiff repeats the same allegations of motive largely centered on speculation about a hypothetical threat to a margin loan for Mr. Isaacman that was disclosed to investors. Opp. at 18-20. But Plaintiff ignores the Court's express rejection of this theory in its holding that the "complained of accounting practice substantially predate[d]" (by years) the supposed margin loan threat, eviscerating any "causal chain between accounting practice and share price pressure Isaacman [allegedly] faced." Dismissal Order at 22. That disconnect has not changed, and Plaintiff's motive theory cannot be squared. Mot. at 10.

Plaintiff now claims that Defendants' motive is adequately pled because Shift4 "continued to misclassify" customer acquisition costs after the SEC's initial outreach due to concerns about Mr. Isaacman's margin loan. Opp. at 18. But Plaintiff alleges no particularized facts to even suggest anyone was concerned about a margin loan in May 2022 when the SEC raised *for the first time* a question about Shift4's years-old customer acquisition cost classification. Mot. at 12. On the contrary, Plaintiff concedes that Defendants *publicly* explained why they believed the

2

classification was correct in response to the SEC's newly stated question.  SAC ¶¶ 76, 80-81.  Far from concealing anything, the Company was open with the SEC, its investors, and the public, regarding its view of why the classification approved by its auditors was correct.  *See Zhou v. NextCure, Inc.*, 2023 WL 4493541, at *11 (S.D.N.Y. July 12, 2023) (dismissing 10(b) claim where "investors had received all [relevant] data"); *L.L. Cap. Partners, L.P. v. Rockefeller Ctr. Props., Inc.*, 939 F. Supp. 294, 299 (S.D.N.Y. 1996) (dismissing fraud allegations for lack of scienter where underlying facts were known to the public).  Indeed, the SEC's questions regarding customer acquisition cost classification were publicly available to investors, *see, e.g.*, Exs. 8, 9, which further undermines Plaintiff's theory that Defendants were motivated to mislead investors through its financial statements.  That is, far from fraudulently concealing some unknown fact, investors were made fully aware of the SEC's position and the reasons for Shift4's disagreement. *Mill Bridge V, Inc. v. Benton*, 2009 WL 4639641, at *25 (E.D. Pa. Dec. 3, 2009) (finding scienter lacking where key information regarding a transaction was fully disclosed).

In any event, defending the Company's customer acquisition cost classification between May and October 2022 says nothing about a motive to defraud investors **at the time of the challenged statements**, which extend as far back as June 5, 2020.  *See* SAC ¶ 94.  Shift4 classified customer acquisition costs as investing activities as early as *2018*, yet Plaintiff still makes no effort to explain how continued belief in that classification in *2022* based on Plaintiff's speculation of a margin loan threat in *2022* says anything about motive at the time of the challenged statements. *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 332 (3d Cir. 2007) (finding no scienter due to failure to plead required state of mind in connection with challenged statements).  In the absence of *any* alleged fact demonstrating that Defendants *knew* Shift4's explanation to the SEC of its belief in its customer acquisition cost classification was wrong, Plaintiff's "speculation and conjecture" alone

3

does not satisfy his heightened pleading burdens under the PSLRA and Rule 9(b). *Bauer v. Eagle Pharms. Inc.*, 2017 WL 2213147, *7 (D.N.J. May 19, 2017); *Kraft v. Third Coast Mistream*, 2021 WL 860987, *13 (S.D.N.Y. Mar. 8, 2021) (declining to find a defendant was "was acting for alternative, undisclosed and nefarious reasons, on speculation alone"); *Tanaskovic v. Realogy Holdings Corp.*, 2021 WL 211049, at *6 (D.N.J. Jan. 21, 2021) (stating that "a purported claim of securities fraud based merely on information that became apparent after the fact . . . is the exact type of 'fraud by hindsight' argument that the Third Circuit has long rejected as improper").

Furthering his irreconcilable timing theory, Plaintiff repeatedly asserts that Mr. Isaacman received "in effect" a margin call in "late-2022." Opp. at 10 n.5, 19 n.14. But Plaintiff ignores that Shift4 restated customer acquisition costs *before* Mr. Isaacman renegotiated his loan. Mot. at 13. That is, Mr. Isaacman did the opposite of seeking to profit from what Plaintiff claims was a fraudulent misrepresentation. *In re Hain Celestial Grp. Inc. Sec. Litig.*, 2022 WL 18859055, at *26 (E.D.N.Y. Nov. 4, 2022) (rejecting scienter allegations where plaintiffs failed to plead that any defendant profited as a result of the alleged fraud).

2.    Mr. Isaacman's Standard Equity Compensation Does Not Support a Strong Inference of Scienter

Plaintiff's Opposition now emphasizes the theory that Mr. Isaacman intentionally misclassified customer acquisition costs beginning at least in 2018 in order to obtain a relatively marginal increase in his equity compensation as CEO once Shift4 became a public company years later. Opp. at 16-18. As an initial matter, this theory suffers from the same chronological gaps as Plaintiff's margin loan theory. *Supra* § Part II.A.1. It is simply implausible that Mr. Isaacman would intentionally misclassify customer acquisition costs beginning in 2018, hoping that two years later, he might be able to obtain $5 million in compensation, following a successful IPO and

4

the increased responsibilities of being a public company CEO. Dismissal Order at 22 (finding the chronology lacking where the subject classification "substantially predate[d]" the alleged motive).

In any event, Plaintiff's compensation theory of scienter is *precisely* the sort of "generalized motive[] that would be possessed by most corporate directors or officers [that] do[es] not establish scienter.'" Mot. at 11 (citing *In re Synchronoss Techs., Inc. Sec. Litig.*, 2019 WL 2849933, at \*16 n.12 (D.N.J. July 2, 2019)).[1] That Mr. Isaacman received equity compensation for being the CEO of a newly public company is insufficient to establish motive under Third Circuit precedent. *Synchronoss Techs.*, 2019 WL 2849933, at \*16 n.12 (citing *In re Dig. Island Sec. Litig.*, 357 F.3d 322, 331 (3d Cir. 2004) (allegation that defendants were motivated by a desire to increase compensation was insufficient because such a desire can be imputed to all corporate officers); *Tabak v. Canadian Solar Inc.*, 549 F. App'x 24, 28 (2d Cir. 2013) (finding CEO's alleged motivation to "price the offering as high as possible" insufficient to plead scienter because "general motivation to act in one's own economic self interest is insufficient to allege motive"). Plaintiff's reliance on Mr. Isaacman's equity compensation is all the more unavailing given he makes no effort to tie that compensation to customer acquisition costs in any way.

Plaintiff's cited cases support the lack of any compelling inference of fraud here. For example, in *Avaya*, the Third Circuit held "general corporate desire" and "motivations to raise capital or increase one's own compensation" are insufficient to establish motive. *Inst'l Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 278-79 (3d Cir. 2009) (Opp. at 16); *see also GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004) ("[M]otives that are generally possessed

---

[1] Plaintiff's suggestion that Mr. Isaacman's compensation "departs from typical compensation" (Opp. at 17) is unsupported and not a well-pled allegation under the PSLRA and Rule 9(b). *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2004) ("Generic and conclusory allegations based upon rumor or conjecture are undisputedly insufficient" to satisfy the PSLRA").

by most corporate directors and officers do not suffice" to plead scienter).  Plaintiff's remaining cases fair no better as each turns on particularized benefits flowing from and motivating the alleged fraud.  *See* Opp. at 17-18 (citing *Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 350 (E.D. Pa. 2014) (defendants obtained "change of control" bonus for CEO and cash for clinical trials from fraudulently inflated stock sale); *In re Refco Sec. Litig.*, 503 F. Supp. 2d 611, 646 (S.D.N.Y. 2007) (defendants received funds from an IPO oversubscribed due to defendants' fraudulent off-book transfers, circular loans, and uncollectible receivables); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 185 (S.D.N.Y. 2003) (defendants could not complete acquisition without fraudulently inflated stock prices and CEO received bonus 2.5 times his salary); *In re AT&T Corp. Sec. Litig.*, 2002 WL 31190863, at *25 (D.N.J. Jan. 30, 2002) (defendants made knowingly false statements "in an effort" to boost stock prices for IPO)).[2]

Plaintiff's Opposition continues to offer no particularized fact demonstrating that Mr. Isaacman or *anyone* at Shift4 knew or believed customer acquisition costs were misclassified in 2018 (or at any time), much less that Mr. Isaacman used that knowledge in connection with his standard CEO compensation two years later.  Opp. at 16-20.[3]  Mr. Isaacman's compensation cannot serve as a motive to commit fraud without some particularized allegation tying that compensation to the specific fraud alleged here.  *See In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380

---

[2] *Worldcom* is inapposite as it involved nearly $1 billion of personal loans for the CEO, including loans from the company itself, that were not disclosed to investors or lenders.  *In re Worldcom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 402, 406, 416-17 (S.D.N.Y. 2003) (Opp. at 19-20).

[3] Plaintiff's reference to Mr. Isaacman's stock vesting before other unnamed employees is of no moment.  Opp. at 17-18.  Plaintiff does not explain how stock vesting creates something other than a "typical compensation incentive[]" for a corporate executive, which is precisely the typical executive compensation that cannot establish scienter.  *See Avaya, Inc.*, 564 F.3d at 278-79.  Plaintiff's cited case is in accord.  In *Frater* (Opp. 17-18), the court found compensation relevant where a bonus gave an employee "personal incentives relating to a stock sale in a way that departs from executives' typical compensation incentives."  996 F. Supp. 2d at 350.

F. Supp. 2d 574, 582 (D.N.J. 2005) (rejecting scienter allegations based on misstated income without particularized allegations that defendants "anticipate[d] that their misrepresentation could later be advantageous" in corporate transaction).

Plaintiff's conclusory assertion that the initial capitalization of customer acquisition costs was "without any legitimate basis" does not move the needle. Opp. at 16. There is no indication in the SAC or elsewhere that Shift4 or Mr. Isaacman ever considered the Company's classification of customer acquisition costs to be inaccurate before the SEC raised the issue. Mot. at 7, 11-12. Furthermore, the fact that this classification appeared consistently over multiple years in statements audited by PwC and reviewed by the SEC reflects the Company's belief that the classification was correct. *Id.* Plaintiff is wrong: there was a legitimate basis for the classification in 2018 and after. *Id.*; *Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at *16 (N.D. Cal. Sept. 29, 2021) (dismissing Section 10(b) claim for lack of scienter where plaintiffs alleged no "facts that demonstrat[ing] that [defendants] knew of the relevant GAAP provisions or knew that [the] interpretation and application of them was unreasonable under the circumstances").

### 3.    Plaintiff's Motive Theory Is Irreconcilable With Reality

Plaintiff's Opposition again seeks to avoid the fact that his motive theory is implausible given Mr. Isaacman's financial position. Plaintiff has no meaningful response to the fact that Mr. Isaacman conducting some long-lasting fraud that had no impact on Shift4's key financial metrics just to potentially earn $5 million more as a public company CEO or to avoid a hypothetical margin call is irreconcilable with Mr. Isaacman's wealth. Opp. at 4, 18, 20; Mot. at 13. Far from being "irrelevant" Opp. at 20, even Plaintiff's cited case considered a defendant's wealth in connection with theories of motive and scienter. *See SEC v. Goldstone*, 2016 WL 3654273, at *12-13, *15 (D.N.M. June 13, 2016) (Opp. 20) (considering wealth evidence "when one party has opened the door to such evidence" as relevant to "motive and scienter"). Plaintiff cannot reasonably dispute

that Mr. Isaacman is a billionaire, as established by Plaintiff's own allegations. SAC ¶¶ 6, 10, 41-43. Worse still, Plaintiff concedes that Mr. Isaacman *purchased* $100 million of Shift4 stock in connection with the IPO, SAC ¶ 6, which negates any inference of scienter. *See Nat'l Junior Baseball League v. Pharmanet Dev. Grp.*, 720 F. Supp. 2d 517, 558 (D.N.J. 2010) (rejecting motive allegations where defendants did not sell stock during class period) . Plaintiff's speculative and conclusory allegations of financial motive for Mr. Isaacman fall far short of his heavy burden under the PSLRA and Rule 9(b).[4]

**B.      Mr. Isaacman's Title Does Not Support A Strong Inference Of Scienter**

Plaintiff argues in a footnote that Mr. Isaacman "had substantial opportunity to engage in fraudulent acts due to [his] executive-level positions." Opp. at 18 n.13. That is no response to Defendants' argument that generalized allegations of Mr. Isaacman's role at Shift4 are insufficient to establish scienter. *See* Mot. at 18. It is well-settled—even in Plaintiff's cited case—that vague allegations of a defendant's role at a company or knowledge of its business are insufficient to plead scienter. *See, e.g.*, *Mill*, 2009 WL 4639641, at *28 (Opp. at 22) ("The Third Circuit has held that any generalized inference that a defendant must be aware of certain information based solely on his or her position within an organization falls short of the PSLRA's heightened pleading standard for state of mind."); *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d Cir. 2013) ("[C]orporate management's general awareness of the day-to-day workings of the company's business does not

---

[4] Plaintiff's other cited cases are inapposite. Opp. at 20 (citing *Bodnar v. Amco Ins. Co.*, 2014 WL 3428877, at *5 (M.D. Pa. July 11, 2014) (discussing only judicial notice); *Kamden-Ouaffo v. Hucarro*, 2017 WL 11724428, at *2 (D.N.J. Jan. 13, 2017) (declining to take notice of Uber CEO's appointment to a presidential advisory board in matter regarding a driving incident); *PG Pub. Co. v. Aichele*, 902 F. Supp. 2d 724, 735 (W.D. Pa. 2012) (declining to take judicial notice of the truth of the statements contained in a newspaper article as these are "frequently disputed")).

establish scienter—at least absent some additional allegations of specific information conveyed to management and related to fraud.").

**C.    The Opposition Repeats The Same Allegations About Shift4's CFO Departure That The Court Has Rejected**

Plaintiff again speculates that Mr. Herring's departure as Shift4's CFO was due to his supposed disapproval of the Company's classification of customer acquisition costs.  Opp. at 21. The Court has already rejected this argument, and for good reasons.  Dismissal Order at 22-23. Plaintiff adds nothing new and simply continues to ignore that Mr. Herring signed the very financial statements that Plaintiff challenges for classifying customer acquisition costs as investing activities **after** announcing his impending departure from the Company.  *See* Mot. at 14-15; Ex. 4 at 54; SAC ¶ 126.  This undisputed fact is irreconcilable with Plaintiff's theory that Mr. Herring resigned in protest over the purported customer acquisition cost classification.  Again, the very cases that Plaintiff cites hold that departure of executives is generally insufficient to plead a strong inference of scienter.  Opp. at 21 (citing *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2015 WL 3755218, at *16-17  (E.D. Pa. June 16, 2015) (finding that "[g]enerally, the resignation of key officers is insufficient to show scienter to commit the alleged fraud," but departure of executives directly responsible for alleged fraud may contribute to allegations of scienter); *Vanderhoef v. China Auto Logistics Inc.*, 2021 WL 3260849, at *5 (D.N.J. July 30, 2021) (finding that, only in tandem with auditing violations, resignations of auditors, and conflicts of interest, did resignations of CEO and CFO contributed to an inference of scienter)).

**D.    The Opposition Still Does Not Tie "Boys' Club" Allegations To Any Purported Fraudulent Inference**

Plaintiff spends a significant portion of his Opposition dramatizing his allegations about a purported "boys' club" that, again, this Court already rightly rejected.  *See* Opp. at 5-9, 24.  The Court held that Plaintiff has failed to "flesh out a theory as to how these details figure into the

'fraudulent' conduct alleged[.]"  Dismissal Order at 25-26 (citing *In re Hertz Glob. Holdings, Inc.*, 905 F.3d 106, 117 (3d Cir. 2018) ("Allegations of mismanagement will only support a securities fraud claim if they are coupled with allegations that the defendants were aware, or recklessly disregarded, that their mismanagement created an environment in which fraud was occurring.")).  But instead of fleshing out a connection, Plaintiff simply regurgitates allegations from the Second Amended Complaint about Shift4 employees purportedly being friends or family of Mr. Isaacman and purported fraud at two third party entities long before the class period, without in any way tying them to customer acquisition costs.  *Compare* Opp. at 7-8, 24-25 *with* Mot. at 15-17; *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 1177505, at *12 (S.D.N.Y. Mar. 29, 2021) (not crediting confidential witness allegations that were not connected to challenged statements).  In any event, as the court found previously, "cursory impression[s]" of former employees guessing who might be friends with whom or otherwise speculating about matters outside of their role do not meet Plaintiff's burden under the PSLRA.  Dismissal Order at 20 (citing *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011) ("confidential source allegations must show that individual defendants actually possessed the knowledge highlighting the falsity of public statements.")).

        **E.**      **The Opposition Confirms That Plaintiff's Allegations Of "Suspicious" Activity At Third Parties Are Vague And Irrelevant**

Plaintiff essentially ignores Defendants' arguments that Plaintiff's new claims of purported fraud at third-party customers years before the class period are unrelated to customer acquisition costs whatsoever.  Mot. at 16-18.  Plaintiff just repeats the SAC's allegations that Mr. Isaacman purportedly did not cut off certain customers based on concerns by a CW about potential fraud at those customers.  Opp. at 24-25.  But, again, Plaintiff fails to explain how these issues at customers—not alleged to involve *any wrongdoing at Shift4*—support any inference of a fraudulent intent regarding the accounting treatment of customer acquisition costs years after the

10

fact.  *Glaser*, 772 F. Supp. 2d at 591 (rejecting CW allegations that did not show defendants "actually possessed the knowledge highlighting the falsity of public statements"); *Hertz*, 905 F.3d at 117 (disagreement with management style or approach does not support scienter absent compelling inference defendants knew they were committing fraud); *Rosi*, 2021 WL 1177505, at *12.  Plaintiff's only cited case actually rejects scienter allegations based on purported "permeating" accounting problems because they were not tethered to defendants' states of mind related to challenged statements.  *Hertz*, 905 F.3d at 117 (Opp. at 24-25).

### F.    The Opposition Continues To Misrepresent The Restatement's Magnitude

Plaintiff continues to point to the percentage change reflected in the restatement of customer acquisition costs as evidence of scienter.  Opp. at 22-24.  But that is nothing more than arguing that the restatement alone is enough to establish scienter.  That is not the law.  The restatement here had ***zero impact*** on the Company's key financial metrics: no impact to revenues, no impact to net loss, no impact to gross profit, no impact to assets or liability, and no impact to total cash or cash equivalents.  Mot. at 18-19; SAC ¶¶ 84-85; Ex. 12 at 90.  Plaintiff's failure to explain how a restatement with no impact on any top-line metric is significant in the context of the overall Company undermines any inference of scienter.  *See* Mot. at 18-19 (citing cases).

Plaintiff references the Company's statement that "flows from operations" create liquidity for Shift4, which might be important to investors, Opp. at 24, but Plaintiff fails to explain how that says anything about *scienter*.  Whether some investor might find cash flows from operating activities interesting or important is not the test for scienter.  A restatement is only relevant to scienter if it is so drastic when compared to overall operations. *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 202 (2d Cir. 2009) (finding scienter lacking where restatement of submetric was immaterial in light of overall operations).  Overall operations were not affected by the restatement at all.  This is far afield from the restatements cited by Plaintiff

11

as supporting scienter, all of which focus on sizable impacts on top-line metrics (such as revenue or net income) and demonstrate precisely what is lacking in this case.[5]

### G.      Plaintiff Still Does Not Support A Core Operations Theory Of Scienter

Plaintiff's Opposition appears to argue that anytime allegations of fraud relate tangentially to customer acquisitions for any customer-facing company, scienter is established.  Opp. at 22. Unsurprisingly, Plaintiff cites no case standing for such a proposition.  The core operations theory of scienter is reserved for "rare instances" where the relevant facts—here, whether customer acquisition costs should be investing or operating activities—is "of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter."  *Percoco v. Deckers Outdoor Corp.*, 2013 WL 3584370, at *5 (D. Del. 2013).  Plaintiff conflates customer acquisition costs with customer revenue more generally.  Opp. at 22 (arguing customer acquisition costs are "fees paid by merchants who use Shift4's payments platform").  But Plaintiff offers no explanation for how a single sub-metric of revenue would be so prominent, particularly where a change in that metric had no impact on revenues.  And in any event, Plaintiff's core operations theory fails because he does not allege any Defendant knew at the time of the challenged statements that classifying customer acquisition costs as investing activities was wrong.  *In re Eros Int'l PLC Sec. Litig.*, 2021 WL 1560728, at *13 (D.N.J. Apr. 20, 2021) (rejecting core operations theory where plaintiff failed to allege "specific information conveyed to the Individual Defendants").

Plaintiff's cited case underscores the insufficiency of his allegations.  In *DFC*, the court held that defendants held themselves out as "possessing significant knowledge" of the company's

---

[5] Plaintiff's cases serve only demonstrate what is lacking in the SAC.  *See* Opp. 23 (citing, for example, *Hertz.*, 905 F.3d at 116-17 (finding "at most some" but "not a strong" inference of scienter in a restatement that overstated its ***net income*** by $132 million (***20.23%***) and its pre-tax income by $215 million (***17.58%***)) (emphasis added)).

"core business and primary source of revenue" that plaintiff alleged were fraudulent. *DFC*, 2015 WL 3755218, at \*14 (Opp. at 22). Here, Plaintiff cites no instance of Mr. Isaacman claiming to be an expert in accounting for customer acquisition costs, and those costs not a "primary source of revenue"—indeed, their relation to sales is tangential at best. Plaintiff's remaining authorities are inapposite for the same reason. Opp. at 22 (citing *In re Viropharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458, 473 (E.D. Pa. 2014) (deeming an FDA decision on company's key pharmaceutical product to be a core operation); *Mill Bridge*, 2009 WL 4639641, at \*31 (deeming a transaction "that could provide a significant influx of capital" into a near-bankrupt exchange to be a core operation)).

H.    **The Opposition Does Not Overcome The Far More Compelling Nonfraudulent Inference**

The Court previously held "that the inference of scienter is far less compelling than the opposing inference: Shift4 believed the classification of customer acquisition costs in the financial statement was correct." Dismissal Order at 26. Nothing in the Second Amended Complaint or the Opposition justifies a departure from that conclusion. Plaintiff makes no mention of (1) PwC's approval of numerous financial statements containing the challenged classification, (2) the fact that the SEC's raised no concern with the classification prior to May 2022 despite numerous financial statements and Shift4's IPO incorporating that classification, (3) the Company's *public* explanation for the rationale underlying the calculation, (4) the Company's *public* disclosure of the margin loan, (5) the fact that Shift4 published the restatement *before* Mr. Isaacman renegotiated his margin loan in December 2022, and (6) the fact that Mr. Herring signed financial statements incorporating the challenged classification *after* he publicly announced his departure.

III.    **CONCLUSION**

Defendants request that the Court dismiss the Second Amended Complaint with prejudice.

13

Dated: November 18, 2024

**FITZPATRICK LENTZ & BUBBA, P.C.**

*/s/ Joshua A. Gildea*

Joshua A. Gildea (SBN 205911)
Two City Center
645 West Hamilton Street, Suite 800
Allentown, Pennsylvania 18101
Telephone: (610) 797-9000
jgildea@flblaw.com

**LATHAM & WATKINS LLP**
Melanie M. Blunschi (admitted *pro hac vice*)
Daniel R. Gherardi (admitted *pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
melaine.blunschi@lw.com
daniel.gherardi@lw.com

Benjamin Naftalis (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
benjamin.naftalis@lw.com

*Attorneys for Defendants*

14